JOHN CRAWFORD and RICHARD S. HARTSHORNE v. JOHN G. BERTHOLF, JOSEPH PARKER, WILLIAM PARKER, and JOSEPH H. VAN MATER.

The practice of examining witnesses a second time, on the same matter, disapproved.

The execution and acknowledgment of a deed of conveyance, is not sufficient; it must be delivered to the purchaser, actually or in contemplation of law, to pass the title.

It is not necessary that there should be an actual handing over of the instrument, to constitute a delivery; a deed may be delivered by words without acts, by acts without words, or by both words and acts.

A deed may be effectual to pass real estate, though it be left in the custody of the grantor. If both parties be present, and the contract is to all appearance consummated, without any condition or qualification annexed, it is a complete and valid deed, notwithstanding it be left in the custody of the grantor.

It is necessary, however, that there should be some act evincing the intent: it must satisfactorily appear, if not from acts or express words, yet from circumstances at least, that there was an intention to part with the deed, and of course to pass the title.

Where the evidence opposes the idea that there was a delivery, and proves, that although there might have been an intention to deliver, founded on the presumption that the contract was about to be consummated; yet that such intention was abandoned, and it was distinctly stated that the deed could not or would not be delivered at that time; it cannot be considered a delivery.

William Parker, the elder, by his will devised a farm to his son Joseph Parker; and directed, that if the property appropriated for that purpose should not be enough to pay his debts, his sons, Joseph Parker and William Parker, should pay the remainder. Joseph Parker, being in possession of the place devised to him, offered it for sale at public auction, and agreed to take in payment any lawful claims against the estate of his father. William L. Lloyd became the purchaser. He then proposed to borrow of John Crawford a sealed bill given him by the testator for one thousand eight hundred

dollars, on which about two thousand dollars was due; and pay it to Joseph Parker in part of the purchase; and in lieu of it, to give J. Crawford a mortgage on the property; to which all parties agreed; and W. Lloyd was let into possession. The parties afterwards met to complete the purchase; when it was proposed by Lloyd, and agreed to by Parker, that beside the said sealed bill to Crawford, Parker should take two bonds given to Thomas Lloyd, and a sealed bill given to the executors of Thomas Lloyd, in part payment, and for the balance of the purchase money take the note of W. Lloyd, with J. H. Van Mater as security; and that on receiving these the deed should be delivered. Parker executed and acknowledged a deed to Lloyd for the premises, and it was laid on the table. Lloyd executed and delivered a bond and mortgage to Crawford for two thousand dollars, which was afterwards recorded. Crawford delivered his sealed bill to Lloyd, who gave it to Parker in part payment, together with the two bonds to T. Lloyd and sealed bill to the executors of T. Lloyd, as claims against the testator's estate. The interest was cast on them, they were taken into possession by Parker; he tore the seals from two of the instruments, and Lloyd tore the seal from a third; the seals were torn from the sealed bill of Crawford's and two of the bonds. Lloyd then signed the note to Parker for the balance of the purchase money, which was to be signed by J. H. Van Mater at a future day. Lloyd then said, this (the deed) I suppose belongs to me, and the scrivener was about to hand it to him; but Parker said, no, you cannot have it until the conditions are fully complied with. It was then agreed that the deed should be delivered the next second-day, when the note and security was to be given. Lloyd went away and left the deed, which was handed back to Parker. Under these circumstances, the deed cannot be considered as delivered.

Before the business at this meeting was closed, Parker began to suspect that some of the bonds he had received were not genuine; and after Lloyd went away, mentioned his suspicions to Dr. Ten Broeck, who was present. Some days afterwards Lloyd called on Parker; said he had Van Mater's security to the note, and wanted the deed. Parker, then being satisfied that two of the bonds he had received were not genuine, said he would not accept the note till the bonds were made good; and refused to deliver the deed. He offered to return the bills and bonds he had received to Lloyd, who refused to take them. Parker then brought an ejectment for the land, and Lloyd filed a bill for specific performance of the contract, and obtained an injunction to stay proceedings in the ejectment. An issue was awarded to try the genuineness of the bonds, two of which were found to be spurious: whereupon the injunction was dissolved and the bill dismissed, and Parker recovered possession of the land. After the termination of this suit, the estate of William Parker, the testator, proving to be insolvent; his executors, under an order of the orphan's court of the county of Monmouth, sold and conveyed the farm to J. G. Bertholf, for three thousand two hundred and seventy-five dollars and eighty-six cents; after which the interest of W. Lloyd in the premises was sold, under an execution against him, by the sheriff, to J. H. Van Mater, for fourteen dollars and twenty-seven cents. J. Crawford assigned his bond and mortgage to Richard S. Hartshorne, (the sealed bill being still unpaid,) upon which the complainants, Crawford and Hartshorne,

filed the present bill ; praying that the mortgage may be decreed to be a lien on the premises, or that the complainants may be decreed to have an equitable lien on the property, for the amount of the sealed bill or mortgage; and that an account be taken, and the executors of W. Parker decreed to pay it. Held that the complainants have shown no sufficient ground of equity to entitle them to relief.

When a contract is made for the sale of an estate, equity considers the vendor as a trustee for the purchaser, of the estate sold ; and the purchaser as trustee of the purchase money, for the vendor.

As a consequence of this rule, the purchaser may sell or charge the estate, before the conveyance is executed. He may come into this court, claiming a specific performance of the contract, and compel the execution of the title.

If he has paid any part of the purchase money, he will be considered as having a lien on the property for the amount thus paid; and a court of equity will not compel him to render up possession, until he shall have been repaid.

But all this proceeds on the principle of honesty and good faith between the parties; without this, equity will not interfere. If there be fraud in the transaction, equity will not yield its aid to the wrong doer; but will leave him to his legal remedy.

It is a sound maxim, that " he who commits inequity shall not have equity."— In this case this maxim will apply. W. L. Lloyd had no equity. He had paid part of the purchase money in available securities ; the other securities offered were not genuine. He attempted fraudulently to impose on the vendor, and was considered as entitled to no equitable relief. He could not obtain a decree for specific performance ; but, on the ground of fraud, his bill was dismissed.

Under these circumstances, Lloyd, personally, had had no lien upon the property for the money he had paid. He was entitled to a return of the money (or securities) paid, or to recover it back of the vendor, but nothing more.

Such being the case, Lloyd had no equitable right that he could convey to Crawford ; and Crawford, considered simply as a purchaser under Lloyd, can have no rights as against the defendants.

This is not the case of notice. When one affected with notice conveys to one without notice, the assignee, in case he has the legal estate, shall be protected. Here the assignee has not the legal estate. His assignor was not affected with notice of any incumbrance or claim, but was guilty of fraud ; and the assignee is seeking protection, not against the incumbrancer, but against the owner of the legal estate.

It is a general rule in equity, that when a person having rights, and knowing those rights, sees another person take a mortgage upon property, without disclosing his title, he shall not be allowed afterwards to set up his title to defeat the mortgage. The same principle applies to other transactions.

The cases under this head of equity, all go on the ground of misrepresentation or fraudulent concealment, whereby an innocent person is induced to do what he otherwise would not do.

In this case, there was no misrepresentation on the part of Parker. As to concealment, his not communicating to Crawford, at the time, his suspicions of

the genuineness of the bonds, when they were mere suspicions, and he had no personal knowledge of the fact; does not render him liable to the imputation of fraud.

A party, to be charged on the ground of concealment, should be aware of his rights. Fraud implies knowledge: if there was a mistake, this court will not consider it fraud.

Nor was Parker guilty of fraud in not returning the sealed bill to Crawford: he did not deal with him. The bill came not from Crawford, but from Lloyd to Parker. It belonged to Lloyd: he had purchased it. When he failed to comply, he was entitled to receive back what he had paid: it was offered to him, and he refused it.

If Crawford had taken any pains, he might have recovered the possession of his bill, and been in as good a situation as when he passed it to Lloyd. The mutilation of the bill, by tearing off the seals, could not have affected the validity of the bill, or impaired his rights.

That the estate to which he must look for payment, has since become wasted, in consequence of which the complainants may suffer loss, does not alter the principle ; nor can it, in this case, furnish a substantive ground of relief.

WILLIAM Parker, late of Monmouth, by his last will and testament, dated May 28, 1812, ordered his executors to pay all his debts and legacies out of his moveable estate, and the lands which he should in his said will order to be sold. He gave to his son, Joseph Parker, a property known by the name of the Potter place; and directed, that if there should not be enough to pay the debts in the property appropriated for that purpose, his two sons, Joseph and William, should pay the remainder. The testator died in 1815, and the will was proved by both executors. In 1816, Joseph Parker being in possession of the Potter place, so devised to him, advertised it for sale at public auction. At the sale it was struck off to William L. Lloyd, he being the highest bidder.

The bill then charges, that the testator in his life time was indebted to John Crawford, one of the complainants, in and by a certain single bill, dated 1st April, 1812, in the sum of two thousand dollars or upwards. This bill Lloyd proposed to borrow of Crawford and pay to Parker, in part payment of the land, and give to Crawford, in lieu of it, a bond and mortgage on the property so purchased. The arrangement was agreed to by all parties, and they met on the 17th December, 1817, to complete the purchase and sale. It was then agreed that Parker should take, in part payment of the purchase money, the single bill aforementioned ; also two bonds purporting to have been given by

William Parker to one Thomas Lloyd, deceased, and one bill given by said William Parker to the executors of Thomas Lloyd; and that for the balance, Joseph Parker should take the note of William L. Lloyd, the purchaser, with Joseph H. Van Mater as his surety; and that on receiving the said securities, a deed should be delivered to the purchaser.

The bill further charges, that the purchaser, William L. Lloyd, was let into possession on the 1st of April, 1817, and continued in on the 17th December, 1817, when the parties met to complete the purchase. That at this meeting John Crawford attended, for the purpose of delivering over the said single bill, and receiving his bond and mortgage from William L. Lloyd. That Joseph Parker was there, attended by Dr. Samuel W. Ten Broeck, the agent of the executors of William Parker, deceased; and then produced a deed from himself and wife to the said William L. Lloyd for the property, bearing date the 1st of April, 1817, duly executed and acknowledged. That at the same time, Dr. Saml. W. Ten Broeck, the aforesaid agent, produced a deed of mortgage prepared by himself, from the said William L. Lloyd to the said John Crawford, dated December 16, 1817. That at this meeting the notes, bills and obligations agreed by Joseph Parker to be received in part payment were produced, and the amount of them deducted from the purchase money; and a note was thereupon drawn for the balance, to be signed by the said William L. Lloyd at that time, and by Joseph H. Van Mater at a future day. That thereupon the said notes, bills or obligations were delivered up to the said Joseph Parker, or his agent, and the seals of two of them torn off by the said Joseph Parker, and of another one by the said William L. Lloyd. That William L. Lloyd then signed the note for the balance, and Joseph Parker delivered to him the deed, which he accepted and took into his possession; and having it in his possession, he, in the presence of Parker, executed to John Crawford a bond and mortgage for the amount of the note or single bill delivered to him by Crawford, and which he had delivered to Joseph Parker. That this mortgage was afterwards registered, on the 28th January, 1818, in the clerk's office in Freehold, in the county of Monmouth. The bill then charges that Joseph Parker, and Ten Broeck, the

Oct. 1831.

Crawford
et al.
v.
Bertholf et al.

agent, were both present when Crawford loaned and delivered the single bill to Lloyd, and saw and knew that Crawford accepted in lieu thereof the bond and mortgage from Lloyd, without making any claim or giving any warning whatever. That the said single bill was accepted by the said Joseph Parker as one of the debts to be paid out of the Potter place, and was a lien on it, and has always since been retained by said Parker, and has been cancelled or otherwise held as a voucher and never returned or delivered either to Lloyd or Crawford. That afterwards, either because the note for the balance aforesaid was not executed, or because some suspicion arose as to the genuineness of some of the obligations that had been delivered by Lloyd to Parker, the deed came again into the possession of Joseph Parker, who afterwards refused to deliver the same, but brought an action of ejectment for the said premises. That upon this, Lloyd filed a bill in this court for the purpose of obtaining the deed and for a specific performance of the contract, and also for an injunction; which bill was afterwards dismissed with costs. The bill further charges, that during the pendency of this suit, the executors and their agent frequently promised the complainant, Crawford, that if he would not interfere in the suit by becoming a party thereto, or instituting proceedings on his mortgage, that it should be considered a lien on the premises, and fully satisfied. That after the termination of the suit, and under pretence of some rule or order of the orphan's court of the county of Monmouth, the executors sold the mortgaged premises to John G. Bertholf for three thousand two hundred and seventy-five dollars and eighty-six cents, and made him a deed therefor, which has since been duly recorded. That at the sale Crawford caused notice to be given of his mortgage; and it is expressly charged, that Bertholf had full notice, both in fact and in law, before the purchase.

The bill further charges that the same premises, or the interest of William L. Lloyd therein, was subsequently sold by the sheriff, under an execution against Lloyd, and purchased by Joseph H. Van Mater, for fourteen dollars and thirty-seven cents, and that the sheriff made a deed to him accordingly; and that on the 13th September, 1825, Crawford assigned the bond and mortgage to

Richard S. Hartshorne; that the bill is still unpaid, and the estate of William Parker insolvent.

Under these circumstances, the complainants pray that the mortgage may be decreed to be a lien on the premises; or that the complainants, if more equitable, may be decreed to have an equitable lien on the property for the amount of the note or the mortgage; and that an account be taken, and the said executors be decreed to pay it, and in default thereof that the property be sold, &c.

The answer of Joseph Parker admits the will and the sale, as set out in the bill; and says that in April, 1817, he was ready to deliver a deed to the purchaser, Lloyd, and so informed him, and showed him the deed, and requested him to make the first payment; but he was not prepared to do it. That on the 16th December, 1817, William L. Lloyd called on him, and proposed to deliver to him, in part payment of the purchase money, the notes, bills and bonds before mentioned; and proposed further to give to him, for the balance, his own note with Joseph H. Van Mater as his security. That the defendant, presuming the instruments thus offered to be genuine, was disposed to accept of the offer, and tore off the seals from two of the said bonds; but before the business was completed he began to suspect the genuineness of two of the bonds, though he believed the sealed bill given to Crawford to be genuine. From delicacy to the feelings of Lloyd he did not communicate his suspicions at that time, but when Lloyd left the room he mentioned his suspicions to Dr. Ten Broeck. That he kept the bonds for several days for the purpose of having them examined, and being confirmed in his suspicions he tendered them, and also the bill of Crawford, to Lloyd, who refused to receive them. He denies that he ever delivered the deed to Lloyd; but alleges that the arrangement was never completed, and that Lloyd was never entitled to a delivery of the deed; that he never gave his bond, with Van Mater his surety, for the balance. He admits that Lloyd was let into possession in the spring of 1817, under the impression that he would honestly comply with the terms of the purchase; and that he was willing to take in payment any genuine claims that Lloyd could produce against the estate of William Parker, deceased; but considering that it

was attempted to practice a fraud upon him, he felt justified in refusing to deliver the deed. He denies that he accepted the sealed bills or delivered the deed, and alleges that before such acceptance and delivery, suspicions arose as to the genuineness of some of them, which led to an adjournment; and he denies cancelling the sealed bill of the complainant. He admits that after tendering the bills, he brought an ejectment to recover possession of the premises; and that a bill was thereupon filed in this court by William L. Lloyd, as above stated: that after answer put in, a feigned issue was awarded to ascertain the genuineness of the two suspected bills; and that on the trial of the issue they were found to be spurious; upon which the bill was dismissed, and the possession of the property decreed to the defendant. He admits, further, that the debt of Crawford against the estate is a just debt, and that they had always been willing to allow it in a course of administration. He denies that he or his co-executor ever promised Crawford, that if he would not interfere in the suit with Lloyd, that his mortgage should be paid, or considered a lien on the property. He admits the estate of his testator to be insolvent.

The defendant Bertholf, the last purchaser, admits the purchase, and denies that Crawford, or any person in his behalf, gave him notice of his mortgage at the sale, or at any time before the payment of the purchase money; and that he purchased and paid the money without any kind of notice of such claim.

They admit the judgment and sale to Joseph H. Van Mater; and also that the charge of the assignment of the bond and mortgage to Hartshorne may be true; but insist that if true, it was not bona fide, but made to give to the claim the appearance of being brought forward by an innocent assignee.

Testimony was taken on both sides: it is noticed in detail, as it applies to the several points considered, in the opinion of the court. The case was argued by

*G. D. Wall,* for complainants;

*G. Wood,* for defendants.

59

Oct. 1831.

Crawford
et al.
v.
Bertholf et al.

Cases cited :—1 *W. Blac. R.* 150 ; 3 *Pow. M.* 1062 ; 1 *Mad.* 209 ; 2 *Pow. M.* 427 ; 5 *John. C.* 272 ; *Rev. L.* 435 ; 7 *Pick. R.* 91 ; 18 *Ves.* 515 ; 18 *John.* 544 ; 2 *Ball and B.* 75, 303 ; 1 *Scho. and L.* 90, 103 ; 1 *John. C.* 566, 574 ; 6 *Halst. R.* 610 ; case of *B. Hopkins,* in this court.

THE CHANCELLOR. The first ground taken by the complainants, is, that the mortgage given by Lloyd to Crawford, and by Crawford assigned to Hartshorne, is a legal and subsisting mortgage ; and therefore that Hartshorne is entitled to relief, simply as a mortgagee.

Whether the mortgage be a legal mortgage or not must depend, in a great measure, on the correct solution of the question, whether the deed was delivered in contemplation of law ? If the deed was actually delivered to the purchaser, the title passed with it, and the mortgage would be good, unless taken out of the general rule by some special circumstances. The delivery of the deed is expressly alleged in the bill, and as expressly denied in the answer ; and the answer must be taken as true, unless overcome by the evidence. Several witnesses have been examined to this point on the part of the complainant, but they have altogether failed to establish it. Joseph Parker, jun. says there was no delivery of the deed ; that it was agreed between the parties that the deed was to be delivered on the next second-day, when the note and security was to be given ; that the deed laid on the table, and W. L. Lloyd said, I suppose this belongs to me : Dr. Ten Broeck and Joseph Parker said *no,* you cannot have it till the conditions are fully complied with ; and the deed was accordingly left and Lloyd went away. Jacob Croxson, another witness called by complainant, was present and took the acknowledgment on the deed and mortgage. He was then going to hand the deed to William L. Lloyd, but Parker and Ten Broeck objected to it, till the conditions were complied with, and witness gave the deed to Joseph Parker. Lloyd never laid his finger on it after the acknowledgment was taken. The testimony of Logan Bennett, another witness of the complainant, would lead to a somewhat different conclusion. He was present at an interview between Lloyd and Parker. Lloyd told Parker he had come to

comply; he had Joseph H. Van Mater security, and wanted the deed that was left with Mr. Croxson. Mr. Parker said he would not accept of Mr. Van Mater as security, till he had first made the bonds good. Lloyd asked him if he had not made, signed, sealed and delivered a deed, and left it with Mr. Croxson, till he should bring Mr. Van Mater as security; and he said he had. This is the only evidence of a delivery of the deed to Mr. Croxson, or any other person; and seeing that it is directly opposed to the testimony of the witnesses who were present when the transaction took place, and especially to that of Jacob Croxson himself, who must have known the fact if it actually occurred, I am induced to believe that the witness is under some mistake. The same witnesses were also examined at a different time, on the part of the defendants, to the same points. Why this was done I do not precisely understand; but I would take this opportunity of saying, that the practice which sometimes obtains, of examining witnesses a second time on the same matters, is one which does not receive the countenance of the court. The facts stated by the witnesses, so far as they touch the point under consideration, are substantially the same in both examinations. Such being the evidence, I cannot consider that the deed in this case was delivered.

It is not necessary that there should be an actual handing over of the instrument to constitute a delivery. A deed may be delivered by words without acts, or by acts without words, or by both acts and words: *Shep. Touch.* 58. A deed may be effectual to pass real estate, though it be left in the custody of the grantor. Thus, if both parties be present, and the contract is to all appearance consummated, without any conditions or qualifications annexed, it is still a complete and valid deed, notwithstanding it be left in the custody of the grantor: *Souvebye* v. *Arden,* 1 *John. C. R.* 240; *Jones* v. *Jones,* 6 *Conn. Rep.* 111; *Doe* v. *Knight,* 5 *Barn. and Cress.* 671; 4 *Kent's Com.* 448. It is necessary, however, that there should be something evincing the intent. It must satisfactorily appear, if not from acts and express words, yet from circumstances at least, that there was an intention to part with the deed, and of course to pass the title. See

the case of *Folly* v. *Van Tuyl,* 4 *Hals. Rep.* 153, and the authorities there cited.

In the case before me, the evidence very plainly opposes the idea that there was any delivery of the deed; and it proves that, although there might have been an intention to deliver it, founded on a presumption that the contract was about to be consummated at that time, yet that such intention was openly abandoned, and it was distinctly stated that the deed could not and would not be delivered at that time. It cannot be considered a delivery. There does not appear to be any room for inference or doubt; and without taking up further time on this part of the case, I am satisfied to say that the complainant has no standing in this court on the ground of his having a legal mortgage.

And this brings me to the second inquiry, which is, whether the complainant may not be considered, in this court, in the light of an equitable mortgagee; having, by reason of his situation, peculiar rights and interests, which a court of equity is bound to protect.

On this part of the subject, a correct understanding of the facts is essentially necessary to lead to a true result.

It appears that by the terms of the sale, Joseph Parker was bound to take in payment any claims that might lawfully be presented against the estate of his father. When Lloyd became the purchaser, he had in his hands some bonds purporting to be charges against the estate, but not enough to meet the purchase money. At this time, John Crawford held a single bill against the estate for a little upwards of two thousand dollars, payable to bearer. This bill Crawford agreed to let Lloyd have, to make up his payment, and Lloyd agreed to give Crawford a first mortgage upon the farm. Crawford attended at the time the deed was to be made. He produced the bill, and handed it to Lloyd, who gave it to Parker in part payment, together with the other bills or bonds that he had against the estate. The interest was cast upon them. They were taken into possession by Parker. He tore the seal from two of the instruments, and Lloyd tore the seal from a third one. The seal was torn from Crawford's note. The deed was produced and acknowledged, ready for delivery; and it was agreed that the deed should be delivered at some future

day, either when a note with security should be given for the balance of the purchase money, or when the conditions should be fully complied with; but it was distinctly understood that the deed was not delivered, and was not to be delivered at that time. During all this time Crawford was present. He saw the notes or bills received and paid. He saw the seals torn from some of them, and the deed executed and acknowledged. The mortgage was produced which was to be given by Lloyd to him: it was acknowled there at the same time the deed was acknowledged, and was passed over to him by Lloyd, as a security for the bond he had taken in lieu of the single bill, and it was afterwards recorded.

It turned out, however, that the contract was never carried into effect. Suspicions arose as to the genuineness of two of the bills passed by Lloyd to Parker, and Parker refused to deliver the deed, but offered to return to Lloyd the notes and bills or bonds received from him. Lloyd peremptorily refused to receive them. Both parties resorted to their legal remedies. Parker brought an ejectment to recover the possession. Lloyd filed a bill for a specific performance, and injoined Parker from proceeding in his action. A feigned issue was awarded out of this court to try the genuineness of the two suspected bills, and they were found to be spurious; and the result was, that Lloyd's bill was dismissed, and Parker recovered possession of the land.

Such I take to be the material facts relating to this part of the transaction; and with these facts before me, I proceed to consider in the first place, the equity of Crawford, as derived immediately from Lloyd the purchaser, through the medium of the mortgage. This, of course, will depend on the equity of Lloyd the purchaser, as against Parker the vendor. It is a rule in equity, that when a contract is made for the sale of an estate, equity considers the vendor as a trustee for the purchaser of the estate sold, and the purchaser as a trustee of the purchase money for the vendor. As a consequence of this, it is admitted that a purchaser may sell or charge the estate before the conveyance is executed: he may come into this court claiming a specific performance, and compel the execution of a title. If he has paid any part of the purchase money, he will be considered as having a lien on the

Oct. 1831,

———

Crawford
et al.
v.
Bertholf et al.

property for the amount thus paid, and a court of equity will not compel him to surrender possession until he shall have been fully satisfied. But all this proceeds upon the principle of honesty and good faith between the parties : without this, equity will not interfere. If there be fraud in the transaction, equity will not yield its aid to the wrong-doer, but leave him to his legal remedy. Where, then, is the equity of Lloyd? He paid a part of the purchase money, it is true, in available securities ; but for other part offered notes or bonds that were not genuine. He attempted, as has already been decided in this court, fraudulently to impose upon the vendor, and he was considered as being entitled to no equitable relief. He could not obtain a decree for a specific performance of the contract, but on the ground of the fraud his bill was dismissed out of this court with costs. Under these circumstances, I think that Lloyd personally had no lien on the property for the purchase money he had paid : he was entitled to a return of the money, or to recover it back of the vendor, but nothing more. It is a sound maxim, that *he who commits inequity shall not have equity : Francis Max.* 2 ; and in this case the maxim will well apply to Lloyd. Such being the case, he had no equitable rights that he could convey to Crawford ; and Crawford, when considered simply in the light of a purchaser under Lloyd, can have no rights as against the defendant. This is not the ordinary case of notice, in which it seems to be settled, that if one affected with notice, conveys to another without notice, the assignee, in case he has the legal estate, shall be protected. Here the assignee has not the legal estate ; his assignor was not affected with notice of any incumbrance or claim, but was guilty of fraud ; and he is seeking protection, not from an incumbrance, but from the owner of the legal estate.

If Crawford is entitled to relief in this case, it is on the ground of fraud, actual or constructive, on the part of Parker. And under this head it is charged against him, that he knew Crawford had loaned the note to Lloyd to make up the amount of the purchase money, and that he was to be secured by a first mortgage on the property ; that Parker was present when the note was passed over, and received it from Lloyd, and took it as so much money ; that he saw Crawford take the bond and mort-

gage as his security, on the express agreement that when the note with security should be given for the balance, the deed should be delivered, and yet gave him no notice of the supposed fraud or forgery; but afterwards refused to comply with his agreement, and kept the note without delivering it up to the owner; and also that he promised, if Crawford would not interfere in the suit with Lloyd, or press his mortgage, he should be fully paid, and his mortgage should be considered a lien on the premises. As to this last part, it is fully denied in the answer, and there is no evidence whatever to support the allegation of the bill. Nor is there any evidence to show that Parker, in any part of the transaction, dealt with Crawford. He made no arrangement with him for his note, or concerning the mortgage. There was no privity or contract between them, so far as I have been able to discover. But it is evident that Parker knew of the loan by Crawford to Lloyd, and that Crawford was to be secured by a mortgage on the land; and it is equally true that he saw Crawford take the mortgage, without giving any notice of his suspicions, or in any way putting him on his guard.

Oct. 1831.

Crawford
et al.
v.
Bertholf et al.

It is a general rule in equity, that where a person having rights, and knowing those rights, sees another person take a mortgage upon property without disclosing his title, he shall not be allowed afterwards to set up his title to defeat the mortgage. Thus, if a first mortgagee stand by and suffer a second mortgagee to advance his money, on the supposition that he is about to have the legal estate, without disclosing his own prior incumbrance, it is an acquiescence in the transaction, and the sufferance of a fraudulent treaty to go on, for which he will lose his priority: 2 *Pow.* 437. So, in like manner, if a mortgagee permit a person who has purchased the equity of redemption without notice, to continue building on the estate without giving him notice of the incumbrance, it was held by Ld. Hardwicke to be a reason why a court of equity would not assist him in setting up the incumbrance: *Steed* v. *Whitaker, Barn. C. C.* 220. The case of *Haring* v. *Fernes, Gilb. Eq. Ca.* 85, is a strong case, in which a fraudulent concealment was relieved against. A father, tenant for life, made a lease to plaintiff for thirty years; who, supposing his lessor to have full power to demise for that

period, laid out considerable sums of money in repairs. The defendant was the eldest son of the lessor, and next tenant in tail to the estate. The son knew his father had no power to make the lease, and told him so, while the improvements were going on, but never acquainted the tenant with the fact; on the contrary, he wrote to him to keep the premises in repair. On the death of the father, the son brought ejectment and recovered: whereupon the tenant brought his bill to be quieted in his possession for the residue of the lease; and the the court decreed in his favour, on the ground of a fraudulent concealment. There are a great variety of cases under this head of equity, to which it is not considered necessary to advert particularly. They go on the ground of misrepresentation or fraudulent concealment, whereby an innocent person is induced to do what he otherwise would not do.

In the case before me, I do not find any misrepresentation on the part of Parker; for the fraud must be brought home to him. It is not sufficient that fraud was practised by Lloyd; there is no pretence that Parker participated in that. Then as to the concealment; Crawford was present during the whole time. He knew there was no delivery of the deed, no actual transfer of the title, but that the matter was to be consummated at some future day. The time when and the mode in which this consummation was to take place, was also known, and doubtless it was the expectation of all that the title would be perfected. But for the fraud of Lloyd it would have taken place. I can see no ground to charge Parker, except that he did not apprise Crawford of his suspicions that the bonds were forged. But these were mere suspicions, he had no knowledge of the fact; and I think it would be carrying the doctrine too far to say, that because he did not at that time, and under the circumstances of delicacy in which he was placed, communicate his suspicions to Crawford, therefore he is to be considered as liable to the imputation of fraud. A party, to be charged on the ground of concealment, should be aware of his rights. Fraud implies knowledge. If there was a mistake, this court will not consider it fraud. In the case of *Cholmondely* v. *Clinton and al.*, 2 *Mer.* 361, Ld. Eldon says: "If, indeed, Ld. Orford had been aware of his title, and had stood

by and seen persons advancing money on the estate, on the faith of its belonging to Ld. Clinton, some question might be made on the ground of acquiescence. But Ld. Orford could not be said to acquiesce in acts which he did not know he had any right to dispute; and therefore, all that has been said about acquiescence, seems to be irrelevant in a case where all parties were under the influence of a common mistake."

It is said, however, that Parker was guilty of a fraud in not delivering the bill back to Crawford; but I cannot concur in that view of the case. As before remarked, Parker did not deal with Crawford. When Lloyd failed to comply, he was entitled to receive back what he had paid; and it was offered him, and he refused to take it. This single bill came from Lloyd to Parker, and not from Crawford. It belonged to Lloyd, for he had purchased it, and it would have been singular if Parker had offered it to Crawford and not to Lloyd, from whom he got it. It is to be remembered, too, that Crawford knew the contract was not completed; that the deed was not made and would not be made. If he had taken the least trouble or pains, he might have recovered the possession of his bill, and would have been in as good a situation as before he passed it to Lloyd. The mutilation of the note, by tearing off the seal, could not have affected its validity or impaired his rights; and the probability is he would have received his money. That the estate and property to which he must look for payment, has since become wasted, in consequence of which the complainant may suffer loss, does not alter principles; nor can it, in this case, furnish a substantive ground for relief.

The result of this view of the case is, that the complainants have shown no sufficient ground of equity to entitle them to relief. Without, therefore, giving any opinion as to the defence of Bertholf, who claims to be a bona fide purchaser from Parker, without notice and for a valuable consideration, I shall order the bill to be dismissed, with costs.